May proceed. Good morning, Your Honors. May it please the Court. Gene Vorovyev on behalf of Mr. McAnulty. The sole issue before the Court deals with evidence of my client's participation in the robbery in 2000 when he was 17 years old. The district court had earlier excluded the fact that he was convicted of that crime under Rule 403. But then it essentially allowed the government to question my client's brother, a witness for the defense, about my client's participation in that same crime with his brother. So, in fact, what the jury ended up learning was not even the conviction, but just the fact it came off as an uncharged act. Was there any evidence that the — with respect to that issue that the prosecution introduced that you had not already introduced on the direct? Your Honor, could you please re-ask that question? I'm sorry. I mean, the issue is whether or not by fronting the issue in the direct examination you have waived the objection to the eliminate ruling. So my question is, is there anything the prosecution added, any information it added on cross that had not already been fronted in the direct examination? Your Honor, the answer to your question is I don't think the prosecution added anything beyond what was stated on the direct exam. But I would like to respectfully push back a little on the idea that this was some kind of an eliminate ruling. This was a mid-trial ruling right before my client's brother took the stand. The parties litigated the objection. The district court was very clear in the ruling. It's coming in over your objection. The government was very clear that it wants to introduce the evidence of my client's participation in that robbery as evidence of bias. So I just — I guess I would have to disagree with the characterization of that as eliminate. I know, but also one of the things that Oler says is that, you know, the government might decide as the trial plays out and sees how the examination goes, we may not need to even get into this issue. They may not use it. And that's one of the reasons why Oler adopted the rule that it did, that if you, you know, get ahead of the government and introduce it yourself, you forfeit the objection. And I think the way the court just framed it, I think kind of gets to my position why I think Oler doesn't apply. Oler did — was an eliminate ruling, whereas there is a reasonable chance that between the time there is a pretrial ruling and the time you actually get to the actual introduction of the evidence in question, somebody might change their mind. That's not our case. I'm just saying on this record, it would be a stretch to say that there was some chance that somebody's mind was going to be changed. I mean, this happened right before the witness took the stand. But if he came across in the direct as really unbelievable and the testimony was a disaster, the government might decide not to load up the issue for appeal and let it go on cross-examination. But by fronting it, you take that off the table, and that is one of the things that Oler emphasized. Well, I think it might be at best a secondary factor. I think the primary nature of the rationale in Oler was that it was a pretrial ruling. I really — and I think if you look at how other courts looked at it, I think most have focused on the fact that it was an eliminate pretrial ruling. It's not — I think it would be over-reading Oler to say that every time you say it first, regardless of any other circumstances, you forfeit. Because in this case, for example, my client's lawyer did everything he possibly could to say this is over my objection. He litigated it. He stated his objection clearly. He got the ruling. It was right before the witness took the stand. He said, you know, I guess I'm going to — in fact, he said this explicitly. He said, I'm going to ask this question because I'm being forced to. To say that he's fronting it, I would urge the court not to do that. I think it would be far beyond what Oler contemplated. Do you have any authority or any case you can cite that supports your position? Nothing from this — from this circuit directly. There was one Third Circuit case that I cited which questioned applicability of Oler outside the context of Rule 609 impeachment was a prior conviction. And I think there is a point in that line of thought because one of the other rationales in Oler was that, you know, when the defender takes a stand, the government has a right to cross-examine, including with a proof of prior conviction. We don't even have that because here it's not my client that's being cross-examined with a proof of a prior conviction. Here, the fact that the jury learns of it is a byproduct of the fact that another witness is being cross-examined. The court excluded the conviction as evidence of impeachment against my client. Let me ask you this. Let's assume that you were right or there was a question about the application of Oler. What about the harmless error rule? I mean, wasn't there overwhelming evidence of your client's participation? I mean, in this case, I mean, for what he was convicted, there were controlled buys. There were all sorts of evidence of drug, you know, dealings found when his apartment was searched. I mean, don't you have, even without this, in other words, testimony about his participation in a prior robbery, wasn't there a lot of evidence against your client? I would characterize the government's case as, I mean, relatively strong circumstantial evidence but by no means overwhelming. First of all, there was nothing directly connecting my client to the drugs. No prints on the packaging, no DNA. They didn't even take it. The buy money was not found in his possession. There is no video recording of any of the sales. He doesn't make a cremating admission and say, oh, I did it. So, I mean, those are the kind of types of evidence where you say, well, it's conclusive. So I think it's not conclusive. There is circumstantial evidence connecting him to the sale. But I think the government case still relies in a fairly significant manner on a testimony of a confidential informant who had significant credibility issues. And obviously that's the jury's call. But my point is only that if this error had not happened, I mean, there is a reasonable chance the jury might say, well, you know, the government's case is okay but not overwhelming and they're relying on some shaky foundation. And what my client presented as defense is not inherently inconsistent with the trial evidence. I mean, the jury could buy it or not buy it. I mean, that's fine. But once you get into evidence that in 2000, as far as the jury knows, he got away with it. I mean, he wasn't charged with that robbery. They said conviction for James McAnulty, but my client participated. So for all they know, it's an uncharged act. That tends to, for lack of a more official term, dirty up my client just as a person of bad character. I mean, robbery has a connotation with a lay person. You know, it's a violent crime. It tends to portray him in a very bad light. And I think it could make a difference. You know, the harmless error standard is not absolute certainty. The burden is on the government to show that it's more probable than not that the error didn't affect the outcome of the trial. Did the fact that it was a robbery come out in either the direct or the cross? I believe so, Your Honor. I mean, because I'm looking, and in the direct it says, now in 2001, sir, is it true that you were convicted of a crime and your brother was a participant? Yes, it is. It's been over 20 years. Yes, sir. And then it moves on. And then in the cross, there came a time on one occasion running around together and ended up getting convicted of a felony, correct? That's correct. And that was in 2001, 2001, or 2002. It was a long time ago. And for how long were you incarcerated thereafter? So it doesn't look like even the fact that the robbery came out? To be honest with you, Your Honor, I thought it did, but I will have to double check. That's why I was reluctant to discern my answer. I mean, but that's the other thing that's odd about this. Normally we, in assessing harmless error, we would look at, well, how did the government actually bring it in? And it was something about the details of how they brought it in makes it harmful or harmless. But here we're assessing, you know, his own attorney's conduct in bringing it in, because he decided after losing the eliminator to do it himself. Your Honor, I would only say to that, that in many, like, for example, in California, this is a very common practice, and I suspect it is also so in many other states. When you lose an evidential ruling, this is not eliminated, but you lose an evidential ruling, you made your record. Sometimes you're basically, you prigged the boil, because, frankly, the government is entitled to impeach a credibility of a witness with a prior conviction, but I don't think it's entitled to an additional impression that the defendant tried to hide it by waiting until the government to mention it on the cross. I think that's a separate issue. So I don't think there's anything inherently unreasonable in, for a defense attorney to make the record as clear as you can timely, and they say, look, under protest I'm doing this. I mean, I can't honestly think what my colleague would have done differently to preserve the record. And I see that my time has run out. Does the Court have any other questions? Thank you, Counsel. Good morning, Your Honors. May it please the Court. I'm Assistant United States Attorney Cody Terpak on behalf of the United States. And to kind of touch off where you just left off, I think Your Honor was completely right. The robbery did not come out. The fact that it was a robbery, it was just that there was a conviction. The conviction involved something with a brother. Yes, Your Honor. But not that it was a robbery. Yes, Your Honor. So the excerpt that you read, both from direct and from cross, was the extent in the week-long trial of evidence that came out regarding the appellant's involvement in this robbery, but the fact that it was a robbery not coming out. It's about 11 lines of transcript in a week-long trial, and the jury wasn't left with any did not have that information. And specifically, it was left out because that information was meant to probe the bias of the appellant's brother, James. And because of that, that's exactly what the Court instructed the jury on with how to deal with that bias evidence and the prior conviction itself. I'd also like to talk briefly about the standard of review, given this is a waiver case. This Court, in the Ninth Circuit opinion for Oler, before it went up to the Supreme Court, held where the defendant waives his right to appeal the district court's in limine ruling, the court need not decide whether the district court erred. Of course, that was affirmed by the U.S. Supreme Court. And then in cases that have been cited by this Court afterwards, that's exactly how this Court has treated it. It's been decided that there was a waiver, and then the Court did not get to the merits. In one of the cases, I think it was United States v. Taylor that was included in the supplement, the Court didn't even address the argument and merely put in a footnote, this is waived, see Oler. So, in other words, regardless of whether the limited evidence of James McAnulty's conviction and the appellant's participation should have been admitted, the appellant does not have a right to appeal that now in this case. And related to that, this Court has applied the waiver principle in non-609 cases before. This principle isn't limited to just a prior conviction being used to impeach a defendant who chose to take the stand. This has been applied in 404 cases. It's been applied in 401 and 403 cases. The one case, the seminal case that I had included in the 28J supplement was Buwoto. In that one, it was 401 and 403 evidence. There's a little bit of a factual distinction because that evidence was originally brought out before the Court in an opening argument, but this Court nonetheless said if you, the party who introduces the evidence, introduced that first preemptively to take the sting out, then you do not get to appeal whether or not that was proper to begin with. You were the party that introduced it. You were the party that has to live with that decision at the end of the day. There's also some argument from the appellant that this order from the Court was somehow not an in limine order. This is a textbook in limine order where the party — one of the parties indicated that they were going to put on a witness that hadn't been priorly noticed. The government, in response, said, hey, we intend to impeach, but wanted to bring it up with the Court first. The Court gave a preliminary ruling with the expectation that the government was going to elicit that information. The parties discussed it at length with the Court outside of the jury's presence. There was that preliminary order that was put on, and then the appellant preemptively put that on. The one thing that was stated in the appellant's argument a few minutes ago was that the decision in Oler was a pretrial ruling. If you go back and look at the briefs and the opinions from Oler, both the Ninth Circuit and the Supreme Court briefs and opinions, the district court issued its ruling on the first day of trial. That was, I believe, a Wednesday. It's not exactly clear when the defendant testified in relation to that, but the jury returned a guilty verdict on Monday. So that ruling was within a day or two. This wasn't, you know, months in advance of trial where there had been extensive litigation and then a ruling from the Court. And it's the government's position that even if that were the case here or in Oler, that the waiver principle would still apply. Your Honor was right in pointing out that it does take that option away from both the Court and the government to come off of that speculative order to begin with. What often happens at trial is you'll have a witness who testifies somewhat differently than what was expected, and it's not worth putting on that evidence to raise the appellate point. So I think that fits squarely here with Oler. And then unless Your Honor's had any additional questions, I don't have any more comments. Thank you, counsel. Do you have one minute for rebuttal? Your Honor, I have two points to make. One, even if the jury didn't know this was a robbery versus a felony, the district court felt strongly enough about this prejudicial effect to exclude it as a conviction. To then allow it to come in as evidence of essentially an uncharged act is just — I think it's irrational. Because if you think under 403 that's too prejudicial, the fact of the conviction, I don't see how participation in it, which comes off as an uncharged act, is any less prejudicial. And for the reason stated in the briefing, the probative value of it as to James seemed even smaller as impeachment value against my client, because they're brothers. There's evidence of extensional familial relationships. So any possible inference of bias would be minor compared to that evidence. And my second point would be on the nature of the ruling here. I mean, the question is not necessarily how many days have passed between, you know, ruling and testimony. The fact is that when you're dealing with preliminary rulings, usually it's couched as preliminary. There is some contemplation that it would be changed at a later time. I respectfully disagree with counsel. This ruling was as clear as a bell. It was coming in. I can't really see what else my colleague could have done to preserve the record anymore. It would be, frankly, unfair to say that, well, he waived the argument anyway after he litigated extensively. Thank you. Thank you, counsel. United States v. McNulty is submitted.
judges: Gilman, WARDLAW, COLLINS